JUDGE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES LYNN MURRAY, JR.,     )   No. CV15-5720 RJB
           Petitioner,        )
                          )
         v.                    )   MEMORANDUM IN SUPPORT OF
                          )   § 2255 MOTION TO VACATE
UNITED STATES OF AMERICA,      )   SENTENCE
                          )
           Respondent.       )
_____ )

## I.   STATEMENT OF FACTS

On November 26, 1996, this Court sentenced Mr. Murray, who previously had pleaded guilty to Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). This Court determined him to be an Armed Career Criminal (ACC), subject to an enhanced sentence under the provision of 18 U.S.C. § 924(e). The Court relied upon Mr. Murray's convictions for Second Degree Robbery, Second Degree Burglary, and Second Degree Assault as the basis for the ACC enhanced penalty. Mr. Murray was sentenced to 210 months imprisonment to be followed by a term of 60 months supervised release. If, as argued below, he was not properly deemed an Armed Career Criminal, he would have faced a maximum sentence of ten years imprisonment and three years' supervised release.

On December 13, 2011, Mr. Murray was released from the custody of the Federal Bureau of Prisons and began his term of supervised release. On April 5, 2015, during the fourth year of his supervised release, Mr. Murray was charged by the State of

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  North Carolina with Assault with a Deadly Weapon Inflicting Serious Injury.  As a

2  result, a petition to revoke his federal supervised release was filed.  Jurisdiction over his

3  supervised release was transferred pursuant to 18 U.S.C. § 3605.  The District Court in

4  the Eastern District of North Carolina revoked his supervised release on October 7,

5  2015, and sentenced him to eight months imprisonment.  He is currently in custody on

6  that sentence.

7      On October 7, 2015, Mr. Murray filed a motion to vacate his sentence under 28

8  U.S.C. § 2255.[1]

9  ## II.   ARGUMENT

10 **A.     This Court Has Jurisdiction Over Mr. Murray's § 2255 Motion.**

11      In its Response in Opposition to Defendant's Motion for Release Pending

12 Resolution of His § 2255 Motion (Dkt. 47), the Government raised the question of

13 whether this Court had jurisdiction over the Motion for Release.  Response at 2.  The

14 Government did not address the issue further.  Mr. Murray assumes that whatever

15 contention the Government may have had, it applied only to the Motion for Release,

16 and not to the underlying § 2255 motion, especially since the Government later stated

17 that the North Carolina court was correct in ordering the § 2255 motion filed in that

18 district dismissed, without prejudice to his filing the motion in this district.

19      However, in the interests of touching all bases, Mr. Murray will briefly address

20 the jurisdictional issue:  Section 2255 specifically provides that any motion to correct a

21 sentence should be made to the "court which imposed the sentence[.]"  This Court is the

22 one that imposed the sentence, meaning that this Court has jurisdiction over this action.

23

24

25 [1] Mr. Murray had previously filed a Motion to Vacate in the Eastern District of North
   Carolina.  That court dismissed the motion due to lack of jurisdiction without prejudice
26 to his refiling the motion "in the appropriate district court."  *See* Judgment in a 2255
   Case, Eastern District of North Carolina, Civil Case Number: 5:15-CV-452-H.

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**B.     This Motion is Properly Brought Under *Johnson v. United States*.**

In his Motion for Release Pending Court's Resolution of §2255 Motion (Dkt. 43), Mr. Murray argued that his ACC sentence could not be based on the residual clause under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  He anticipated that the Government would concede this point but would argue that the ACC sentence could be justified under the enumerated crimes prong of ACCA (either categorically or under the modified categorical approach).  He therefore rebutted that anticipated argument, contending that these other prongs of the ACCA could not justify the ACCA sentence. In its Response (Dkt. 47), however, the Government contended that Mr. Murray bore the burden of demonstrating that the original ACC sentence was based on the residual clause and not under the enumerated crimes prong.  Unless Mr. Murray met that burden, the Government argued, his § 2255 motion would be untimely.

The Government is incorrect.  It is indisputable that one of the ACCA prongs is unconstitutional under *Johnson*.  The record is admittedly unclear whether this Court relied on that unconstitutional prong when concluding that Mr. Murray was an Armed Career Criminal.  In those circumstances, the question is which party bears the "risk of doubt" as to whether this Court relied on that unconstitutional prong or another.  *See O'Neal v. McAninch*, 513 U.S. 432, 438 (1995) (using the term "risk of doubt" rather than "burden of proof").

At oral argument on Mr. Murray's Motion for Bail, counsel drew an analogy to another situation where the record is unclear whether the finder-of-fact relied on an unconstitutional basis for its conclusion.  Specifically, if a jury was presented with two bases for finding a defendant guilty, one unconstitutional and the other constitutional, the defendant's conviction must be reversed unless it can be concluded under the proper harmless error standard that the jury relied on the constitutional bases.  "[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or

1  more independent grounds, and one of those grounds is insufficient, because the verdict

2  may have rested exclusively on the insufficient ground." *Zant v. Stephens*, 462 U.S.

3  862, 881 (1983).

4  That rule is subject to harmless error analysis under the standard of *Brecht v.*

5  *Abrahamson*, 507 U.S. 619 (1993). *See Hedgpeth v. Pulido*, 555 U.S. 57 (2008). The

6  important lesson to be drawn from the analogy is that under the *Brecht* standard, the

7  defendant does not bear the burden of proof that the error was harmless. Rather, the

8  *Brecht* standard is one "placing the risk of doubt on the State," or in this case, the

9  Government. *O'Neal*, 513 U.S. at 438. *Accord*, *Deck v. Jenkins*, 768 F.3d 1015, 1022

10 (9th Cir. 2014) ("While there is no burden of proof per se, 'we look to the State to

11 instill in us a "fair assurance" that there was no effect on the verdict'") (citations

12 omitted).

13 As with the hypothesized jury verdict, this Court "was instructed [by the ACCA]

14 that it could rely on any of two or more independent grounds" for finding Mr. Murray

15 guilty as an Armed Career Criminal. *Cf. Zant*, 462 U.S. at 881. We now know, from

16 *Johnson*, that one of those grounds is unconstitutional. Accordingly, the risk of doubt

17 lies with the Government, not Mr. Murray.

18 The Government cannot meet that burden. It is true, as the Government argued,

19 that the Ninth Circuit did not hold that Washington's burglary statutes were not a

20 categorical match for generic burglary until *United States v. Wenner*, 351 F.3d 969 (9th

21 Cir. 2003), after Mr. Murray's conviction as an ACC. *See* Government's Response

22 (Dkt. 47) at 5-6. However, as early as 1990, the Ninth Circuit was concluding that

23 burglary statutes were violent felonies under the "substantial risk" language that

24 appears in the residual clause. *See United States v. Becker*, 919 F.2d 568 (9th Cir.

25 1990) (finding that California's burglary statute came with 18 U.S.C. § 16, which lacks

26

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

the enumerated offense clause but includes language that is essentially identical to § 924(e)'s residual clause).

Since no objection was raised to whether Mr. Murray was an Armed Career Criminal, this Court presumably gave no thought to what prong of the ACCA applied to Mr. Murray's burglary conviction.  But had a proper challenge been raised, this Court could well have turned to the residual clause to support its ACC conclusion under such cases as *Becker*.

As a result, this Motion to Vacate is properly deemed one brought under *Johnson*.  Since it was brought within one year of that decision, it is timely under § 2255(f)(3).

**C.     Mr. Murray's Burglary Conviction is Not a Violent Felony.**

With the residual clause unavailable, Mr. Murray's ACC conviction can be upheld only if his burglary conviction was a violent felony under either the categorical or modified categorical approach.  For the reasons argued in Mr. Murray's Motion for Bail and for two additional reasons, the burglary conviction is not a violent felony under any approach.

**[The following two sub-sections are identical to the arguments raised in Parts III.B.1 and III.B.2 of Mr. Murray's previous Motion for Release.  They are included here for the convenience of the Court and Government counsel.]**

> ***1.     Second Degree Burglary is Overbroad, Meaning it is Not a Violent Felony under the Categorical Approach.***

Washington's second degree burglary statute is broader than the generic definition based on Washington's definition of "building," and thus is not a categorical match to generic burglary.  That is the express holding of *United States v. Wenner*, 351 F.3d 969, 973 (9th Cir. 2003).

In fact, the statute is also overbroad as to a second element of generic burglary. It does not require "an unlawful entry along the lines of breaking and entering," which

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

is an element of generic burglary. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). Under Washington law, a person also may be guilty of burglary even without an unlawful entry, such as if he enters lawfully under a limited license and then proceeds to exceed the scope of that license. *See State v. Collins*, 110 Wash. 2d 253, 256, 751 P.2d 837, 838 (1988). He thus "remains unlawfully." *Id.* This alternative means for conviction — unlawful entry and remaining unlawfully — is another reason why Washington burglary is not a categorical match to generic burglary.

> 2. **Second Degree Burglary is Not Divisible, Preventing Recourse to the Modified Categorical Approach.**
>
> > a. *Because the Two Overbroad Aspects of Second Degree Burglary Do Not Involve Alternate Elements, the Statute is Not Divisible.*

It might be argued that Washington's second degree burglary statute is divisible because (focusing on the "building" element for the moment) it lists a variety of types of "buildings" in the alternative. But this argument relies on the premise that a finite list of definitions automatically means that a statute is divisible. However, the Ninth Circuit has held expressly to the contrary. *See Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014). To conclude that a list makes a statute divisible, the list must be a list not of alternative *means*, but of alternative *elements* that a jury is required to find beyond a reasonable doubt. As the *Rendon* Court explained:

> [W]hen a court encounters a statute that is written in the disjunctive (that is, with an "or"), that fact alone cannot end the divisibility inquiry. Only when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means.*

*Id.* at 1086 (emphasis in original).

That is not the case here as to either the "enters or remains unlawfully" element or the "building" element. As to the "enters or remains unlawfully" element, both the Washington pattern jury instructions and the Washington courts are clear. The

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    commentary to the pattern jury instruction for that element expressly states, based on

2    case law, that "[t]he two means of committing a burglary — unlawful entry and

3    unlawful remaining — are not generally repugnant and, therefore, jury unanimity as

4    between them is not required."  Washington Pattern Jury Instructions — Criminal 65.02

5    (3d ed. (updated Dec. 2014)) (citing *State v. Gonzales*, 148 P.3d 1046, 1049 (2006)).

6          As to the "building" element, there is a directly applicable general principle.

7    The list of structures upon which the government relies is included not in the burglary

8    statute itself, but in a statute defining "building" for the entire criminal code.  *See* RCW

9    9A.04.110(5).  And it is well-established in Washington case law that "[t]here is no

10   requirement that the jurors agree on the facts supporting the alternative means" in a

11   definition statute.  *State v. Linehan*, 56 P.3d 542, 546 (2002); *see also, e.g., State v.*

12   *Huynh*, 307 P.3d 788, 793 (2013) (jury unanimity not required for type of "great bodily

13   harm"); *State v. Marko*, 27 P.3d 228, 230 (2001) (jury unanimity not required for type

14   of "threat"); *State v. Strohm*, 879 P.2d 962, 966 (1994) (jury unanimity not required for

15   method of "trafficking" in "trafficking in stolen property" case).

16         Even if *Rendon* were not binding Ninth Circuit precedent, the same conclusion

17   — that the modified categorical approach does not apply to alternative means, only to

18   alternative elements — would follow directly from *Descamps*.  As stated in *United*

19   *States v. Cabrera–Gutierrez*, 756 F.3d 1125, 1137 n. 16 (9th Cir.2014), "under

20   *Descamps*, what must be divisible are the elements of the crime, not the mode or means

21   of proving an element."  *See also Descamps*, 133 S. Ct. at 2285, 2290, 2293 (referring

22   throughout to "elements" as the test of divisibility).  Washington case law makes clear

23   that the methods of committing burglary — as to both "building" and "entering and

24   remaining" — are simply means of proving the offense, not elements.

25

26

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

2

> b. *The Washington second degree burglary statute is indivisible because the list of structures in the definition of "building" is just an illustrative list, not an exhaustive list of a finite set of alternatives.*

There is a second reason the Washington burglary statute is not divisible, one completely independent of the holding in *Rendon*.  The list of alternative places that may be "buildings" is not even the finite list that the Government may claim it is.  That is because the list includes a sweeping, unlimited catchall phrase.

In full, the statute defining "building" reads as follows: "'[b]uilding,' in addition to its ordinary meaning, *includes* any dwelling, fenced area, vehicle, railway car, cargo container, *or any other structure* used for lodging of persons or for carrying on business therein."  RCW 9A.04.110(5) (emphasis added).  The word "includes" "denotes a nonexclusive exemplary listing" of things that fall under the definition.  *State v. Hall*, 48 P.3d 350, 352 (2002); *see also United States v. Lynn*, 636 F.3d 1127, 1134 (9th Cir. 2011) (holding that "includes" "provide[s] a non-exhaustive list of examples").  Furthermore, the catchall phrase "any other structure" expands the list to an infinite number of structures.  *See, e.g.*, *State v. Gans*, 886 P.2d 578, 582–83 (1994) (holding that burglary statute's failure to specifically include animal shelters did not evidence intent to exclude them, because statute "refers not only to fenced areas but to 'any other structure'"), *overruled on other grounds*, *State v. Wentz*, 68 P.3d 282 (2003).

This cannot be sufficient under *Descamps*.  *Descamps* held that a general word like "weapon" cannot be narrowed to the various specific weapons it includes.  *See Descamps*, 133 S. Ct. at 2289–90.  This holding cannot be evaded by simply listing several specific examples and adding a catchall "and any other weapon" clause at the end.  Yet, that is essentially how the Washington statute defining "building" is structured.

The Washington statute is indistinguishable in any material respect from the Alabama burglary statute considered by the Eleventh Circuit in *United States v. Howard*, 742 F.3d 1334 (11th Cir. 2014).  That statute defines "building" as follows:

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Any structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor-trailer or combination thereof.

Ala. Code § 13A-7-1(2), *quoted in Howard*, 742 F.3d at 1348.

The Eleventh Circuit held that the "any structure" phrase at the beginning of the statute made it indivisible. It explained: "[t]he items that follow each use of the word 'includes' in the statute are non-exhaustive examples of items that qualify as a 'structure' and thus count as a 'building' under Alabama Code § 13A-7-1(2). The statutory definition of 'building' does not say what is not included." *Howard*, 742 F.3d at 1348 (internal citation omitted). Thus, the court held that "[i]n light of the *Descamps* decision, illustrative examples are not alternative elements." *Id.* (citing *United States v. Cabrera-Umanzor*, 728 F.3d 347, 353 (4th Cir. 2013)). "As a result, the statute is non-generic and indivisible, which means that a conviction under Alabama Code § 13A-7-7 cannot qualify as generic burglary under the ACCA." *Howard*, 742 F.3d at 1349.

The only differences between this Alabama statute and the Washington statute defining "building" are that the Washington statute: (i) places the "any structure" clause at the end of the definition and adds the word "other"; (ii) adds some different illustrative examples and also the general category of "its ordinary meaning;" and (iii) includes only two of the four uses in the Alabama statute ("lodging of persons or for carrying on business" instead of "utiliz[ation] by persons for business, public use, lodging or the storage of goods"). These are distinctions without a difference. The Washington statute is indivisible because it has the same "any structure" catchall phrase as the Alabama statute.

Therefore, controlling Ninth Circuit case law, combined with Washington's own interpretation of its statutes, establishes that, for two separate reasons, Washington second degree burglary is not a divisible statute. Thus, reliance on the modified

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 9

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

categorical approach is prohibited under *Descamps*, and the crime can never serve as an

ACCA predicate in the aftermath of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

### 3. *Even if the Modified Categorical Approach Were Applicable, the Government Cannot Establish that Mr. Murray's Burglary Was a Violent Felony.*

**[This argument was not raised in Mr. Murray's previous Motion for Release.]**

Even if the modified categorical approach were applicable to Mr. Murray's

burglary conviction, it would not establish that conviction as a violent felony. Under

the modified categorical approach, the court will "look beyond the statutory elements to

the charging paper and jury instructions to determine whether the defendant's

conviction necessarily involved facts corresponding to the generic federal offense.'"

*United States v. Simmons*, 782 F.3d 510, 513 (9th Cir. 2015). The only item appearing

in the court documents that might arguably suffice to establish the conviction as a

violent felony is the statement in the First Amended Information identifying the address

of the place that Mr. Murray entered. *See* Exhibit 1.

This is not sufficient for two reasons. First, some of the types of "buildings"

included in Washington's burglary statute can have addresses without being "buildings"

under the federal generic definition of "building." *See* RCW 9A.04.110. As just one

example, a fenced area can easily have an address. Thus, the fact that Mr. Murray

entered a "building" that had an address no more establishes that he committed generic

burglary than does the fact that he entered a "building," as defined under Washington

law.

Secondly, as *Descamps* made clear, the modified categorical approach does not

allow looking to facts alleged by the prosecutor but not necessary to the conviction (a

point that will be developed further below).

In *United States v. Snyder*, 643 F.3d 694, 698 (9th Cir. 2011), the Ninth Circuit

concluded that an Indictment for burglary, listing an address as the place entered,

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1  established that an Oregon burglary was a generic burglary under the modified

2  categorical approach.  *Snyder* is not binding on this Court for two distinct reasons.

3         First, even if the modified categorical approach were applicable and even if that

4  approach would allow the court to look to an allegation such as the existence of an

5  address, the differences between Oregon burglary and Washington burglary mean that

6  *Snyder* has no impact on Mr. Murray's situation.  Under Oregon law, a building, "in

7  addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other

8  structure adapted for overnight accommodation of persons or for carrying on business

9  therein."  *See* ORS § 164.205(1).  This led the Ninth Circuit to conclude in *United*

10 *States v. Mayer*, 560 F.3d 948 (9th Cir.2009), that Oregon's burglary statute is "broader

11 than the definition of generic burglary because the statute does not limit burglary to

12 'building[s] or structure[s],' but also includes non-structures (such as booths, vehicles,

13 boats, and aircraft) that are regularly or intermittently used as lodgings."  *Id.* at 959

14 (brackets in original).  None of the "non-structures" in Oregon's law, namely booths,

15 vehicles, boats, or aircraft, will have an address.  Therefore, *Snyder* concluded that the

16 existence of an address shows that the "building" entered into *under Oregon law* is in

17 fact a "building" under generic burglary.

18        That conclusion, however, does not apply to Washington's burglary statute,

19 which includes fenced areas.  A vacant lot with a fence will almost always have an

20 address, yet will never constitute a "building" under generic burglary.  As a result, the

21 holding in *Snyder* regarding Oregon's burglary statute simply has no relevance to the

22 significance of an address under Washington's definition of burglary.

23        Second, as to whether it would be proper to look to the address that is alleged in

24 a charging document, *Snyder* was decided prior to *Descamps*.  As the *Descamps* Court

25 stated, the problem with the approach it rejected (that set forth in the Ninth Circuit's *en*

26 *banc* decision in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011)),

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

is that a defendant may admit in a plea colloquy "facts that, although unnecessary to the crime of conviction, satisfied an element of the relevant generic offense."  133 S. Ct. at 2289.  The Court referred to facts "unnecessary to the crime of conviction" because a conclusion under the modified categorical approach that a prior offense is a violent felony requires that the "defendant's conviction *necessarily* involved facts corresponding to the generic federal offense."  *See Simmons*, 782 F.3d at 513 (citation omitted; emphasis added).  Among the reasons why the *Descamps* Court rejected the Ninth Circuit's approach are:

> And the statements of fact in [a prosecutor's allegations] may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense — and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that reason.) And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. In this case, for example, Descamps may have let the prosecutor's statement go by because it was irrelevant to the proceedings. He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing 30 years in the future.

*Id.*

Those comments apply equally to Mr. Murray's burglary conviction.  He may have agreed that he entered a building, as broadly defined in Washington, but seen no need to contest an incorrect allegation that it had an address.  The approach endorsed in *Snyder*, of looking to unnecessary facts alleged in a charging document, is "clearly irreconcilable" with that the Supreme Court enunciated in *Descamps*, and is therefore no longer good law.[2]  *See United States v. Snyder*, 5 F. Supp. 3d 1258, 1262 (D. Or. 2014) (district court, on remand from *Snyder*, concludes that after *Descamps*, Oregon

---

[2] In *Snyder*, Judge Tashima expressed his disagreement with the conclusion that the address could suffice under the modified categorical approach, but "reluctantly" concurred because he believed that the majority's conclusion was mandated by precedent, namely *United States v. Stephens*, 237 F.3d 1031 (9th Cir.2001).  *Snyder*, 643 F.3d at 700.  *Stephens*, of course, was also decided prior to *Descamps*.

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 12

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

burglary is not subject to the modified categorical approach; "When a Ninth Circuit decision becomes '"clearly irreconcilable" with the reasoning or theory of intervening higher authority,' this court must follow the higher authority") (citing *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir.2013)).

### 4.   *The Burglary Conviction is Not a Violent Felony Because It Was Not Punishable for a Term Exceeding One Year.*

Independent of the reasons discussed above, Mr. Murray's burglary conviction is not a "violent felony" because it was not a "crime punishable by imprisonment for a term exceeding one year" as the ACCA definition requires.  *See* 18 U.S.C. § 924(e)(2)(B).  While the applicable maximum under the general Washington criminal code provision was more than one year, the maximum under the Washington sentencing guidelines statute — which is binding absent grounds for an "exceptional sentence," *see Blakely v. Washington*, 542 U.S. 296 (2004) — was 8 months.  *See* Exhibit 2.

The Ninth Circuit held in *United States v. Murrillo*, 422 F.3d 1152 (9th Cir. 2005), that it is the general criminal code maximum, rather than the guidelines statute maximum, that controls.  But *Murillo* is no longer good law in light of the Supreme Court's intervening decisions in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), and *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).  In *Carachuri-Rosendo*, the Court required courts to determine the available sentence based on "the conviction itself," not "what might have or could have been charged."  *Id*. at 576.  Similarly, in *Moncrieffe*, the Court required courts to determine "whether the conditions" that would require the conviction to be treated as simple possession "are present or absent" based solely on the "fact of a conviction . . . standing alone."  *Id*. at 1686.

Both the Supreme Court and other circuits — and even the Government — have recognized that this reasoning extends to the question posed by Mr. Murray: whether to look to a state statutory maximum in resolving the "punishable by imprisonment for a term exceeding one year" question, or instead to look to a lower maximum created by a

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 13

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    graduated sentencing scheme based on criminal history and/or other aggravating

2    factors.  Three different circuits have held that *Carachuri-Rosendo* means the

3    defendant-specific maximum under the state graduated sentencing scheme controls, and

4    two of those circuits have overruled prior case law in so holding.  *See United States v.*

5    *Brooks*, 751 F.3d 1204 (10th Cir. 2014); *United States v. Simmons*, 649 F.3d 237 (4th

6    Cir. 2011) (en banc); *United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011).  And

7    two of those opinions were in response to a Supreme Court suggestion that *Carachuri-*

8    *Rosendo* changed the analysis, as reflected by orders vacating and remanding for

9    reconsideration in light of *Carachuri-Rosendo*.  *See Simmons*, 649 F.3d at 239 (noting

10   Supreme Court remand); *Haltiwanger*, 637 F.3d at 882 (same).

11         *United States v. Rodriquez*, 553 U.S. 377 (2008), is not contrary authority for

12   two reasons.  First, in *Rodriquez*, the Court was interpreting the language, "the

13   maximum term of imprisonment . . . prescribed by law."  *See id.* at 390 (placing weight

14   on this language and its common use in other statutes).  Second, in *Carachuri-Rosendo*,

15   the Court interpreted *Rodriquez* as holding "that a recidivist finding could set the

16   'maximum term of imprisonment,' but only when the finding is a part of the record of

17   conviction."  *Carachuri-Rosendo*, 130 S. Ct. at 2587 n.12.  Here, there is no record of

18   the "exceptional sentence" finding that would be needed.  *See Brooks*, 751 F.3d at

19   1210-11 (overruling its precedent that had relied on *Rodriquez*, in light of *Carachuri-*

20   *Rosendo*'s discussion of *Rodriquez*).

21         Furthermore, the Government has recognized the relevance of *Carachuri-*

22   *Rosendo*.  It has done so implicitly by waiving procedural defenses in multiple 28

23   U.S.C. § 2255 cases in which defendants have sought retroactive relief under these

24   courts of appeals decisions.  *See* Brief of the United States, *Shaeffer v. United States*,

25   134 S. Ct. 1874 (2014) (No. 13-7698), 2014 WL 1571934, at *17-18 (collecting cases).

26

1   The sentencing schemes at issue in *Brooks*, *Simmons*, and *Haltiwanger* differ

2   from Washington's, and thus at least some might not be considered directly on point.

3   But the Government has recognized the relevance of *Carachuri-Rosendo* to a

4   sentencing scheme essentially identical to Washington's in a recent Fifth Circuit case,

5   in which it agreed to a summary reversal where an enhanced guideline sentence had

6   been based on two Oregon convictions with statutory maximum sentences of more than

7   a year, but sentencing guideline ranges of less than a year.  *See* United States' Agreed

8   Motion for Summary Remand, *United States v. Martinez*, No. 14-41020 (5th Cir. Jan.

9   14, 2015) (Exhibit 3); Order Granting Motion for Summary Remand, *United States v.*

10  *Martinez*, No. 14-41020 (5th Cir. Jan. 20, 2015) (Exhibit 4).  As stated by the United

11  States, "To be 'punishable' as a felony — that is, by imprisonment for a term exceeding

12  one year — a prior state conviction must establish all the elements and sentencing

13  factors necessary to authorize the punishment beyond one year."  Motion (Exhibit 3 at

14  2-3).  Mr. Murray's prior conviction did not establish sentencing factors that would

15  authorize punishment beyond one year and it is thus not a violent felony.

16  The Tenth Circuit's decision did not decide only the substantive issue.  It also

17  held that a panel could overrule prior circuit precedent — on the ground that

18  *Carachuri-Rosendo* "contradicts or invalidates" the reasoning in the prior case.  *Brooks*,

19  751 F.3d at 1209-10.  It is thus persuasive on both the ultimate issue and the question of

20  whether this Court can decline to follow *Murillo* because it is irreconcilable with

21  intervening precedent.  *But see United States v. Fletes-Ramos*, 612 F. App'x 484, 485

22  (9th Cir. 2015) (unpublished decision stating, on plain error review, that "*Murillo* has

23  not been abrogated or overruled and remains binding law in this circuit").

24  **D.    For Three Separate Reasons, Mr. Murray's Current Sentence is Unlawful.**

25  To summarize, Mr. Murray was not an Armed Career Criminal for each of three

26  separate reasons:  (1) his burglary conviction is not categorically a violent felony and is

not susceptible to the modified categorical approach; (2) even if it were susceptible to the modified categorical approach, the relevant documents do not establish it as a generic burglary; and (3) his maximum sentence was not greater than one year.

If even one of these three points is correct, then his maximum term of supervised release was three years, not five years. *See* 18 U.S.C. § 3583(b)(2).[3]  He was released from prison on December 13, 2011.  Therefore, his supervised release should have terminated on December 13, 2014.  The violation for which he is currently serving time occurred on April 10, 2015, after supervised release should have terminated.  As a result, his current sentence is unlawful and he should be released immediately.

### III.  CONCLUSION

This Court should vacate Mr. Murray's conviction as an Armed Career Criminal and order him released forthwith from the remainder of the sentence imposed for his adjudicated supervised release violation.  The Court should order that a new Judgment be issued, removing the designation as Armed Career Criminal, and specifying a sentence of ten years, with a supervised release period of three years.

DATED this 28th day of October, 2014.

Respectfully submitted,

s/ *Miriam Schwartz*
Assistant Federal Public Defender
Attorney for Charles Lynn Murray, Jr.

---

[3] If the maximum term of imprisonment is not more than ten years, the offense is classified as a Class C felony, and not more than three years of supervised release may be imposed. *See* 18 U.S.C. §§ 3559(a) and 3583(b).  However, if the maximum term of imprisonment is life, the offense is deemed a Class A felony, and five years of supervised release may be imposed. *See id.*

MEMORANDUM IN SUPPORT OF § 2255
MOTION TO VACATE SENTENCE
(*Murray v. US*, CV15-5720 RJB) - 16

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

# CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

*s/ Anita Brewer*
Legal Assistant
Federal Public Defender

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**