1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES LYNN MURRAY, JR.,

               Defendant-Petitioner,

v.

UNITED STATES OF AMERICA,

               Plaintiff-Respondent.

NO. C15-5720RJB
   (CR96-5367RJB)

**ANSWER OPPOSING MOTION
FILED UNDER 28 U.S.C. §2255**

*Note on Motion Calendar:*
**November 16, 2015**

## I.    INTRODUCTION

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Michael S. Morgan, Assistant United States Attorney for said District, submits this answer in opposition to Defendant-Petitioner Charles Lynn Murray Jr.'s motion to vacate and/or correct his sentence pursuant to 28 U.S.C. §2255. CR(2255)_1.[1] Murray's motion should be denied.

---

[1] "CR(2255)_ refers to the Court's record in this case; "CR_" to the Court's record of the underlying criminal case (CR96-5367RJB); "ST_" to the sentencing transcript (attached as hereto as Exhibit 1); and "PSR_" to the Presentence Report.

1
2

**A.     Summary Of Murray's Motion.**

3

Murray is a federal prisoner who is in custody serving an eight-month prison

4

sentence imposed following a supervised release violation.[2]   Murray is subject to a

5

five-year term of supervision, which began after Murray served the 210-month prison

6

sentence imposed for his conviction for being a Felon in Possession of a Firearm, in

7

violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).   In this §2255 motion, Murray

8

contends that a prior conviction that qualified him for sentencing under the Armed Career

9

Criminal Act (ACCA)—a 1991 Washington conviction for Burglary in the Second

10

Degree—is not a "violent felony" within the meaning of ACCA, and thus his five-year

11

term of supervised release is an illegal sentence.   CR(2255)_1 at 5.   Murray raises three

12

separate claims to support that contention.   First, insofar as his burglary conviction was

13

deemed a violent felony under the so-called residual clause of 18 U.S.C.

14

§924(e)(2)(B)(ii), Murray claims that adjudication cannot stand following *Johnson v.*

15

*United States*, 135 S. Ct. 2551 (2015), which invalided ACCA's residual clause as

16

unconstitutionally vague.   CR(2255)_1 at 11; CR(2255)_6 at 3-5   Second, insofar as his

17

burglary conviction was deemed a violent felony because Washington's burglary statute

18

matched the generic burglary crime set forth in §924(e)(2)(B)(ii), that adjudication cannot

19

stand in light of *Descamps v. United States*, 133 S.Ct. 2276 (2013), which reaffirmed

20

how the so-called modified-categorical approach applies to overbroad and non-divisible

21

statutes.   CR(2255)_6 at 5-13.   Third, Murray argues that because the Washington state

22

guidelines range for his burglary conviction was less than one year, under the reasoning

23

of *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010) and *Moncrieffe v. Holder*,

24

133 S. Ct. 1678 (2013), that conviction was not even a felony for ACCA purposes.

25
26

---

27

[2] This sentence was imposed in the United States District Court for the Eastern District of

28

North Carolina (15-CR-0181), the court to which Murray's supervision was transferred
following service of the custodial portion of his sentence.

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB — 2

**B.      Summary Of The United States' Response To Murray's Allegations.**

The government denies that Murray's sentence was imposed in violation of the Constitution or laws of the United States.  As a threshold matter, the government agrees this Court has jurisdiction over this motion notwithstanding the transfer of Murray's supervision to the Eastern District of North Carolina.  *See Napoles v. United States*, 536 F.2d 722, 723-25 (7th Cir. 1976).  The government also agrees that Murray is a prisoner in federal custody, and thus meets the "custody" requirement of the habeas corpus statute.  Murray is presently serving an eighth-month sentence imposed following a supervised release violation, and a defendant on supervision is in "custody" for purposes of §2255.  *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).

Murray's motion must be denied because his claims are all procedurally defaulted and most are also timebarred.  On the merits, Murray has not shown ACCA's residual clause played any role at his sentencing, so he has no claim under *Johnson*.  Murray's burglary conviction was almost certainly found to be a violent felony because burglary is one of the enumerated violent felonies in 18 U.S.C. §924(e)(2)(B)(ii), and under the Ninth Circuit's precedents applying *Descamps* that conviction is categorically a violent felony.  Finally, because the statutory maximum sentence for Murray's burglary conviction was 10 years' imprisonment, it was plainly a felony under ACCA.

**C.      Murray's Use Of Other Federal Remedies And The Untimeliness Of The Majority Of His Current Claims.**

This is not a successive petition, so there is no issue as to abuse or delay under Rule 9 of the Rules Governing Section 2255 Cases.  Murray did not appeal his sentence and, as will be discussed, this renders all his claims procedurally defaulted.  Because Murray cannot establish cause for this default, the Court cannot reach the merits.

Most of Murray's claims are also timebarred.  A one-year statute of limitation applies to §2255 motions.  28 U.S.C. §2255(f).  This limitation period is claim-specific: one timely claim will not salvage other claims that are brought outside the applicable limitation period.  *See Mardesich v. Cate*, 668 F.3d 1164, 1170-71 (9th Cir. 2012).  This

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB — 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

one-year period can run from four different benchmarks, *see* 28 U.S.C. §§2255(f)(1)-(4), but in most cases it commences when the judgment of conviction became final. *See* 28 U.S.C. §2255(f)(1).   Because Murray did not take a direct appeal, his conviction became final "upon the expiration of the time during which []he could have sought review by direct appeal." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001).   Murray's judgment of conviction was entered on November 26, 1996 (CR_25), and became final 10 days later. *See* Former Fed. R. App. 4(b) (1996).   Murray's §2255 motion is plainly untimely using this benchmark.

The one-year period can also start running on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. §2255(h)(3).   This is the benchmark Murray relies on.   CR(2255)_6 at 5.   This benchmark begins to run on the date the Supreme Court decides the case establishing the new right, not the date on which that right is made retroactive. *Dodd v. United States*, 545 U.S. 353, 357-60 (2005).   While the government denies Murray has any claim under *Johnson*, his attempt to litigate this issue is timely. *Johnson* was decided on June 26, 2015, well within a year of Murray's motion.   However, Murray's other claims are predicated on three Supreme Court decisions decided more than a year before Murray filed his motion: *Descamps* (decided June 20, 2013), *Moncrieffe* (decided April 23, 2013), and *Carachuri-Rosendo* (decided June 14, 2010).   Even assuming these decisions "initially recognized" new rights sufficient to fall within the delayed benchmark afforded by §2255(f)(3)—a dubious assumption[3]—any claim based on these decisions is untimely. The vast majority of the claims advanced in Murray's motion are thus timebarred.

---

[3] For example, the Ninth Circuit has held that *Descamps* did not recognize any new rule, but instead just "clarified application of the modified categorical approach in light of existing precedent." *Ezell v. United States*, 778 F.3d 762, 766 (9th Cir. 2015).   As such, the statute of limitation for any *Descamps*-based claim actually began to run in December 1996.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Murray may argue that his various attacks upon his ACCA predicate are just different arguments in support of a single claim—that he was improperly sentenced under ACCA—and that because of his arguments is timely they all are.  *Cf.* CR(2255)_6 at 4-5.  This cannot be right.  To begin, it is obvious Murray is presenting distinct claims for relief, as opposed to a single claim bolstered by alternative arguments.  Claiming ACCA's residual clause is unconstitutionally vague is fundamentally different from claiming a state predicate statute does not meet the definition of an enumerated violent felony, which in turn is fundamentally different from claiming the predicate conviction is not even a felony.  Allowing Murray to aggregate these distinct claims into a single one just because they all seek the same end result—vacatur of Murray's ACCA-based sentence—would make a mockery of §2255's statute of limitation.  And, indeed, in *Mardesich v. Cate*, the Ninth Circuit made clear this claim-specific limitation period cannot be evaded by such aggregation, recognizing that arguments attacking the constitutionality of a statute on alternative grounds (due process, vagueness, and overbreath) were claims that were independent of each other, as well as from a fourth claim challenging the petitioner's resulting custody on double jeopardy grounds.  *See* 668 F.3d at 1172-74.  The same reasoning applies here.  Murray is trying to use the Supreme Court's recent *Johnson* decision to resuscitate claims under *Descamps*, *Moncrieffe*, and *Carachuri-Rosendo* that if raised on their own would indisputably be untimely.  Section 2255's statute of limitation cannot be evaded so easily.

**D.   Need For An Evidentiary Hearing.**

No evidentiary hearing or discovery is required because "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255(b).  "Although section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless 'required to allege specific facts which, if true, would entitle him to relief.'"  *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citation omitted).  Murray has not done so, nor has he asked for a hearing or for discovery.

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  —  5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    The Indictment.**

Murray's conviction arose from an altercation in which Murray shot a man dead. PSR ¶¶6, 10.  On June 6, 1996, Murray was charged in a single-count indictment with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1).  CR_9. The indictment also alleged Murray had a number of prior felony convictions, including convictions that would render him subject to enhanced sentencing under ACCA.  CR_9. Thus, if Murray were convicted and sentenced under ACCA, his statutory sentencing range would be increased from 0 to 10 years to 15 years to life.  *Compare* 18 U.S.C. §924(a)(2) *with* 18 U.S.C. §924(e)(1).  The range of supervised release Murray faced would also be increased from 2 to 3 years to 3 to 5 years.  *See* 18 U.S.C. §§3559(a)(1), (a)(3); USSG §§5D1.2(a)(1), (a)(2).

**B.    Murray's Guilty Plea.**

On August 27, 1996, Murray agreed to plead guilty.  CR_19.  In the plea agreement, Murray admitted possessing the firearm at issue, and also acknowledged that he would receive an enhanced sentence under ACCA.  CR_19 at 3-4.  The Court accepted Murray's guilty plea.  CR_18.

**C.    Murray's Sentencing.**

A defendant is subject to enhanced sentencing under ACCA if he has three prior convictions for "a violent felony or a serious drug offense, or both."  18 U.S.C. §924(e)(1). The Probation Department determined Murray had three prior Washington convictions that qualified as violent felonies:  a 1990 conviction for Robbery in the Second Degree, and separate 1991 convictions for Burglary in the Second Degree and Assault in the Second Degree.  PSR ¶¶ 16-18.  Because of his status as an Armed Career Criminal, the Probation Department set Murray's total offense level at 30.  PSR ¶48 The Probation Department found Murray fell within Criminal History Category VI (PSR ¶110), resulting in a then-mandatory Guidelines range of 168 to 210 months.

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB — 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The defense agreed with the Probation Department's Guidelines calculation (CR_23 at 2) as did the government.  CR_21 at 2-3.  Neither party's memoranda discussed why exactly Murray's predicate felonies met ACCA's definition of a violent felony.  This issue was also not addressed in the plea agreement or the presentence report.

The parties appeared before the Court for sentencing on November 26, 1996.  CR_24.  The parties once again agreed Murray was eligible for sentencing under ACCA, but did not explain why his predicate convictions qualified as violent felonies.  ST_4-6.  The Court sentenced Murray to a 210-month prison term, followed by five years of supervised release, but did not elaborate on why Murray's predicate convictions qualified him for sentencing under ACCA.  ST_8-10.  Nor is this issue addressed in the judgment or the Court's statement of reasons.  CR_23, 26.  As noted, Murray did not appeal.

## III.   ARGUMENT

Murray raises three claims which he contends entitle him to relief under 28 U.S.C. §2255.  He is wrong for a number of reasons.  First, in addition to the timebar discussed earlier, it is clear that all of Murray claims are procedurally defaulted.  Because he cannot overcome that default, for this reason alone his motion must be denied.  And even if he could somehow surmount this procedural bar, Murray has not identified any defect that would warrant vacating or correcting his sentence.

## A.   All Of Murray's Claims Are Subject To An Insurmountable Procedural Bar.

At sentencing, Murray never disputed his eligibility for sentencing under ACCA, and he certainly never claimed his second-degree burglary conviction failed, for whatever reason, to qualify as a violent felony within the meaning of ACCA.  This renders every one of Murray's current claims procedurally defaulted.  *See United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998).  Nor did Murray raise any such claims on direct appeal—indeed he did not even take an appeal—so for this reason too they are procedurally barred.  *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).  Accordingly, Murray's various attacks upon his burglary ACCA predicate will be

reviewable on the merits only if he can "show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). He cannot.

An attorney's ineffectiveness can be "cause" excusing a procedural default, *Rattigan*, 351 F.3d at 964-65, but this rule is no help to Murray. When Murray was sentenced in 1996 a vagueness challenge to ACCA's residual clause was almost certainly going to fail. *See, e.g.*, *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990). This reality is confirmed by the fact that the Supreme Court later held the clause was not unconstitutionally vague. *Sykes v. United States*, 131 S. Ct. 2267, 2277 (2011); *James v. United States*, 550 U.S. 192, 211 n.6 (2007). Trial counsel cannot be faulted for not anticipating the Supreme Court's recent about face in *Johnson*, as the Constitution does not require counsel to be clairvoyant. *See Maryland v. Kulbicki*, ___ U.S. ___, 2015 WL 5774453, at *2 (Oct. 5, 2015); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

Similarly, when Murray was sentenced in 1996, the modified categorical approach adopted in *Taylor v. United States*, 495 U.S. 575 (1990) was relatively new, and the Ninth Circuit had yet to fully embrace the idea that a state's idiosyncratic definition of a building could somehow undermine a burglary conviction's status as an enumerated ACCA violent felony. *See, e.g. Sorenson*, 914 F.2d at 175. The Ninth Circuit had certainly not yet articulated the "means/elements" framework that now governs the modified categorical analysis in this Circuit post-*Descamps*, *see Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), and which is the basis for Murray's *Descamps*-based claim. CR(2255)_6 at 5-13. Again, counsel's performance must be evaluated not with the benefit of hindsight, but under the fact and law as they stood at "the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Finally, neither the Ninth Circuit nor the Supreme Court has ever accepted the argument that a state's guidelines system, rather than maximum term authorized by statute, is the benchmark for determining whether an ACCA predicate is a felony. In fact, as will be discussed,

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB — 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206)553-7970

Murray's argument on this point is foreclosed by Ninth Circuit precedent.   Quite obviously, "[t]he failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

As for Murray's failure to raise his current claims on direct appeal, he cannot blame anyone but himself for this, since it was he who decided not to take an appeal. Insofar as Murray might seek to excuse that failure by arguing that the holdings in *Johnson* and *Descamps* were too novel to be anticipated, any such argument fails.   To establish cause under this theory, Murray must show his claims are based on newly-recognized rules that are "'so novel that [their] legal bas[e]s [were] not reasonably available,'" and thus he could not have been expected to raise them earlier. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). This is a demanding standard.   It is not enough to show his claims were legally foreclosed during the time when he could have appealed; Murray must show the new rules were then virtually unknown. *See id.*; *see also Stewart v. LaGrand*, 526 U.S. 115, 119-20, (1999); *Smith v. Murray*, 477 U.S. 527, 537 (1986).   Murray cannot make this showing.

At the time Murray could have appealed, an argument that ACCA's residual clause was unconstitutionally vague was not novel.   To the contrary, "the Federal Reporters were replete with cases" challenging ACCA's enhancement provisions on vagueness grounds. *Bousley*, 523 U.S. at 622. *See, e.g., United States v. Argo*, 925 F.2d 1133, 1134 (9th Cir. 1991); *Sorenson*, 914 F.2d at 175.   Arguments challenging burglary convictions on the ground that a state's definition of building was too broad to qualify as an ACCA predicate were also being made at that time. *See, e.g.*, *United States v. Hensley*, 46 F.3d 1147, 1995 WL 37326, *3-*4 (9th Cir. 1995).[4]   Indeed, this line of argument was first suggested by the Supreme Court in *Taylor, see* 495 U.S. at 599, and

---

[4] Ninth Circuit Rule 36-3(c)(ii) permits the citation of unpublished decisions issued before January 1, 2007 "for factual purposes."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Supreme Court noted in *Descamps* that this decision was just an application of *Taylor* that broke no new analytical ground.  *See* 133 S.Ct. at 2283.  While these challenges to ACCA were not meeting with success back in 1996, this was no excuse for Murray's failure to pursue these issues then, as "'futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623. (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).  Finally, while the government is not aware of any cases around 1996 which employed a means/elements analysis like that adopted in *Rendon*, *Rendon* considered this approach compelled by *Descamps*, *see* 764 F.3d at 1086-87, which, as just noted, was itself merely an application of the analytical framework established in *Taylor*.  Since *Descamps* did not establish a new rule, *Ezell*, 778 F.3d at 766, it follows that *Rendon* did not either.[5]  Because *Descamps* and *Rendon* were, in the end, just applying *Taylor*, neither was sufficiently novel to excuse Murray's procedural default.  *See Villafuerte v. Stewart*, 111 F.3d 616, 629 (9th Cir. 1997); *Molina v. Rison*, 886 F.2d 1124, 1132 (9th Cir. 1989).

The last way Murray could establish cause would be to show his sentencing under ACCA amounts to a "fundamental miscarriage[] of justice."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004).  However, the Supreme Court has limited the "miscarriage of justice" exception to defendants who are "'actually innocent' of the substantive offense," and to capital defendants who are "actually innocent" of the death sentence. Dretke, 541 U.S. at 393.  Murray falls in neither category.  And even if actual innocence of a non-capital sentence could qualify as cause, Murray would have to show he is factually innocent of the predicate burglary offense that triggered the ACCA enhancement, not just that there is a legal impediment to applying the enhancement.  *See Marrero v. Ives*, 682 F.3d 1190,

---

[5] Of course, if *Rendon* were construed to have announced a new rule independent of *Descamps* (and *Taylor*), any claim based on *Rendon* would be timebarred by 28 U.S.C. §2255(f)(1), since a rule announced by a circuit court does not trigger the delayed running of the statute of limitation afforded by 28 U.S.C. §2255(f)(3).  *See E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006)

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  —  10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206)553-7970

1193 (9th Cir. 2012); *see also Bousley*, 523 U.S. at 623-24.  Murray's various claims asserting that his predicate burglary conviction does not qualify as a violent felony are claims of legal, not factual innocence, and thus cannot excuse his default.  *See Spencer v. United States*, 773 F.3d 1132, 1140 (11th Cir. 2014); *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010); *see also Marrero*, 682 F.3d at 1195.

**B.**   ***Johnson* Has No Present Application, As Murray Has Not Shown His Burglary Conviction Was Deemed To Be A Violent Felony Under ACCA's Residual Clause.**

*Johnson* held that the residual clause in 18 U.S.C. §924(e)(2)(B)(ii) is unconstitutionally vague.  Had the Court relied on the residual clause in finding Murray's second-degree burglary conviction to be an ACCA predicate, and had Murray not procedurally defaulted this claim, he would be entitled to relief.  However, Murray has not shown the residual clause was actually the basis for this predicate finding, and there is virtually no chance it was.  Because Murray has not shown any *Johnson* error infected his sentence, he is entitled to no relief under that decision.

Rather than relying on the residual clause, it is all but certain the Court found Murray's burglary conviction qualified as an ACCA predicate because burglary is one of the enumerated violent felonies listed in §924(e)(2)(B)(ii).  When Murray was sentenced in 1996, the Ninth Circuit had held Oregon's materially-indistinguishable burglary statute was categorically a violent felony.  *See United States v. Cunningham*, 911 F.2d 361, 363 (9th Cir. 1990).  The Ninth Circuit had also observed in a order remanding for resentencing that although Washington "defines burglary broadly to include entry into places other than buildings," a conviction would qualify as an ACCA predicate if the relevant charging documents and other pertinent materials showed a building was involved.  *United States v. Harkey*, 923 F.2d 138, 138-39 & n.1 (9th Cir. 1991).  In *United States v. Kilgore*, 7 F.3d 854, 856 (9th Cir. 1993), the Ninth Circuit similarly upheld an ACCA enhancement based on Washington burglary convictions because the informations and guilty pleas made clear a building was involved, and reserved the

question whether Washington's definition of building rendered its burglary statutes overbroad under *Taylor*.  A decade later the Ninth Circuit answered this question in the affirmative.  *See United States v. Wenner*, 351 F.3d 969, 973-74 (9th Cir. 2003).  It was only after *Wenner* that the Government began trying with regularity to salvage overbroad burglary statutes by relying on the residual clause.  *See*, *e.g.*, *United States v. Terrell*, 593 F.3d 1084, 1093-95 (9th Cir. 2010); *United States v. Mayer*, 560 F.3d 948, 961-63 (9th Cir. 2009); *United States v. Matthews*, 374 F.3d 872, 876 (9th Cir. 2004).  That said, it must be acknowledged such arguments were not unknown around the time of Murray's sentencing.  *See*, *e.g.*, *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995).

Given this history, it highly improbable the Court relied upon ACCA's residual clause to find Murray's second-degree burglary conviction qualified as a violent felony. This conviction's status as a violent felony was never disputed by the parties. Presumably this was because the state court information and Murray's guilty plea statement made clear this crime involved an actual building (CR(2255)_6 Exhs. 1-2), as did the presentence report.  PSR ¶17, 81-84.  Thus, given cases like *Cunningham*, *Harkey*, and *Kilgore*, the parties really had no need to litigate whether this conviction was a violent felony because it plainly qualified under the analyses employed by those decisions.  If the government were instead relying on the then more unconventional residual clause theory, this issue would surely have been discussed by the parties and the Court at sentencing.  It was not, and this silence speaks volumes.

Murray nevertheless argues that because it is "unclear whether this Court relied on the unconstitutional [residual clause] when concluding that [he] was an Armed Career Criminal," the Court must presume it did so unless the government can prove otherwise. CR(2255)_6 at 3.  For the reasons just stated the government believes the record is not really unclear on this issue.  But even assuming the contrary, Murray's allocation of the burden of proof is exactly backwards.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Murray primarily relies on *O'Neal v. McAninch*, which holds that when a constitutional error has been established in a habeas proceeding, and the court has a "grave doubt" whether the error is harmless—meaning the proof of prejudice/harmlessness is "so evenly balanced" the judge cannot decide the issue—"the petitioner must win." 513 U.S. 432, 436 (1995). But the question here is not whether a *Johnson* error is harmless, but whether any such error occurred at all, and the Ninth Circuit has held that *O'Neal* does not apply "to the question of whether constitutional error has in fact occurred." *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997). On that issue the burden is squarely on the §2255 movant to prove, by a preponderance of the evidence, the existence of an error rendering his conviction or sentence unlawful. *See id.*; *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Lee v. United States*, 468 F.2d 906, 906-07 (9th Cir. 1972). The movant also bears the burden of establishing any factual predicates necessary to establish his claim. *See Grady v. United States*, 929 F.2d 468, 471 (9th Cir. 1991). Murray has done neither. At bottom, Murray is arguing that, even though he cannot prove any constitutional error occurred at his sentencing, the government cannot disprove his allegation so he wins by default. That is not how the law works. *See Simmons*, 110 F.3d at 42. Because Murray cannot show ACCA's residual clause played any role in his sentencing, he has no viable claim under *Johnson*.

## C. Under The Ninth Circuit's Post-*Descamps* Precedents Murray's Burglary Conviction Is Categorically A Violent Felony.

Murray contends that Washington's second-degree burglary statute is overbroad, and that under the Ninth Circuit's post-*Descamps* decisions this statute is not divisible, and thus the modified categorical approach may not be used to determine whether this conviction qualifies as an ACCA predicate. As discussed, this claim is both timebarred and procedurally forfeited. It is also meritless.

Burglary is an enumerated violent felony under ACCA. 18 U.S.C. §924(e)(2)(B)(ii). However, ACCA covers only generic burglary, which is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  — 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a crime." *Taylor*, 495 U.S. at 599.  To determine whether a prior burglary (or any other) conviction is categorically a violent felony under ACCA, the Court does not look to the underlying facts of the conviction, but focuses only on "the statutory definition of the prior offense."  *Id.*  The Court then "'compare[s] the elements of the statutory definition of the crime of conviction with [the] federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition.'" *United States v. Lee*, 704 F.3d 785, 788 (9th Cir. 2012) (citation omitted).  If the elements of the state crime match (or are more narrow) that the generic definition, the crime is categorically a violent felony.  *See Taylor*, 495 U.S. at 599.

One of Murray's ACCA predicates was a 1991 Washington conviction for Burglary in the Second Degree.  PSR ¶17.  This crime "ha[s] two elements:  (a) entering or remaining unlawfully in a dwelling other than a vehicle, and (b) intent to commit a crime against a person or property therein."  *State v. Brunson*, 905 P.2d 346, 349 (Wash. 1995); *see also* Wash. Rev. Code §9A.52.030(1).  These elements match *Taylor's* generic definition of burglary, namely an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  495 U.S. at 599.  So, looking strictly at the elements set forth in the statute of conviction, Murray's second-degree burglary conviction is categorically a violent felony.

It is true, as Murray points out (CR(2255)_6 at 5), that a separate statute defines "building" more broadly than the generic definition.  *See* Wash. Rev. Code Ann. §9A.04.110(5).  The government is also aware the Ninth Circuit has previously ruled that because of this expansive definition of "building," Washington's burglary statutes are not categorically violent felonies under ACCA.  *See Wenner*, 351 F.3d at 973; *accord United States v. Grisel*, 488 F.3d 844, 850-51 (9th Cir. 2007) (en banc).  However, these decisions were decided prior to *Descamps*, in which the Supreme Court reaffirmed *Taylor*'s holding that the modified categorical approach—and by logical necessity the

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  — 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

categorical approach—is a strictly elements-based inquiry, *see* 133 S. Ct. at 2283-88, and clarified what constitutes an "element" of the crime. *See id. at* 2289-90.

As the Ninth Circuit has read *Descamps*, a statutory element, as opposed to an alternative means of committing the crime, is any fact set forth in the statute of conviction upon which the jury must "unanimously agree." *Rendon*, 764 F.3d at 1085. The Ninth Circuit has further made clear that statutes which define the terms of a separate criminal statute—*e.g.*, what constitutes a building for purposes of burglary—do not set forth additional elements of the crime (unless state law requires juror unanimity as to which alternative set forth in the definitional statute applies), but just enumerate alternative means of committing the crime. *See United States v. Simmons*, 782 F.3d 510, 516-17 (9th Cir. 2015); *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1135-36 (9th Cir. 2014). And a focus on alternative means, as opposed to elements, has no role to play in a categorical analysis. *See Descamps*, 133 S. Ct. at 2290-92.

Thus, the approach taken in cases like *Wenner* and *Grisel*—which looked beyond the statute of conviction itself to overbroad definitional statutes—cannot be squared with the Ninth Circuit's post-*Descamps* decisions defining what is an element for purposes of a categorical analysis. They are therefore "clearly irreconcilable" with *Descamps* and are no longer controlling. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Rather, what is relevant is only the elements in the second-degree burglary statute itself, not the overbroad definition of building in another statute (which Murray agrees just lists alternative means of committing the crime, as juror unanimity on what type of building was involved is not required [CR(2255)_6 at 7]).[6] *See Simmons*, 782 F.3d at 516-17; *Cabrera-Gutierrez*, 756 F.3d at 1135-36. The building element in Washington's second-degree burglary statute therefore matches the generic crime as defined in *Taylor*.

---

[6] This conclusion is consistent with *Shepard v. United States*, 544 U.S. 13 (2005), as there the overbreadth was contained in the state burglary statute itself, not a separate definitional statute. *See* Mass. Gen. Laws Ann., ch. 266, §16.

Murray further argues that the "enter or remains unlawfully in a building" element renders Washington's statute overbroad (CR(2255)_6 at 6-7), but that cannot be correct. After all, *Taylor* defined generic ACCA burglary as the "unlawful or unprivileged entry into, *or remaining in*, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added). That is what the Washington statute prohibits. Murray thinks it is significant that Washington law allows for a burglary conviction "without an unlawful entry" (CR(2255)_6 at 6), but so does the generic crime defined in *Taylor*. If generic burglary cannot be committed without an unlawful entry, then the unlawful remaining language would be surplusage. And critically, unlike the statute in *Descamps*, Washington law does not allow a person lawfully on the premises to be convicted of burglary; a person must either enter unlawfully, or he must remain unlawfully after his license to enter has been revoked or exceeded. *See State v. Collins*, 751 P.2d. 837, 841 (1988); *State v. Gonzales*, 148 P.3d 1046, 1049 (Wash. Ct. App. 2006). Since this aspect of Washington's burglary statute is materially indistinguishable from the generic crime defined in *Taylor*, the overbreath problem presented in *Descamps* is not implicated.[7]

Relying on *Rendon*, Murray argues that because juror unanimity is not required as to whether the defendant unlawfully entered or unlawfully remained, this fact renders the statute both overbroad and indivisible. *Rendon* of course could not overrule the generic

---

[7] *Descamps* does, at one point, describe generic burglary as "requir[ing] an unlawful entry along the lines of breaking and entering," 133 S. Ct. at 2285, and in an unpublished decision the Ninth Circuit concluded that Washington's unlawful remaining option does not meet this requirement, rendering the statute categorically overbroad. *See United States v. Wilkinson*, 589 F. App'x 348, 350 (9th Cir. 2014). For two reasons this non-precedential opinion should not be followed. First, unlawful remaining actually is a "breaking and entering" for purposes of contemporary generic burglary. *See* 3 Wayne R. LaFave, Substantive Criminal Law, §21.1(a) (2d ed. 2003); *cf. Descamps*, 133 S. Ct. at 2292 ("the generic crime requires breaking and entering *or similar unlawful activity*") (emphasis added). Moreover, *Descamps* did not purport to overrule the generic definition adopted in *Taylor*. *Descamps* actually quoted and relied upon that definition, including element of "'an unlawful or unprivileged entry into, or remaining in, a building or other structure.'" 133 S. Ct. at 2283 (quoting 495 U.S. at 598).

definition adopted in *Taylor* (and applied in *Descamps*), and there is, in reality, no tension between these decisions.  Murray's argument proceeds from the premise that the "unlawfully remaining" language renders the Washington statute overbroad, but as discussed this is not the case.  The "breaking" element of *Taylor*'s generic burglary definition includes both unlawfully entering and unlawfully remaining in a building, and the phrase "enter or remain unlawfully in a building" in the Washington statute similarly sets forth a single element of the crime.  *See Brunson*, 905 P.2d at 349.  Whether the defendant unlawfully entered the building or unlawfully remained in the building are, as Murray recognizes (CR(2255)_6 at 6-7), just two alternative means by which this single element may be proved, and thus unanimity on this point is generally not required.[8]  *See Gonzales*, 148 P.3d at 1049.  Because both means satisfy the generic definition, the statute is not overbroad and thus there is no divisibility problem, and hence no conflict with *Rendon*.  And since this element, along with the rest of Washington's burglary statute, matches *Taylor*'s generic definition of burglary, this crime is categorically a violent felony.  Murray's numerous arguments about whether this crime can qualify as a violent felony under the modified categorical approach (CR(2255)_6 at 5-13) are thus beside the point.

**D.     Murray's Burglary Conviction Was A Felony For ACCA Purposes.**

Under ACCA, a "violent felony" includes any state conviction for a qualifying offense that is "punishable by imprisonment for a term exceeding one year."  18 U.S.C. §924(e)(2)(B).  Murray reasons that because the presumptive state guidelines range for his burglary conviction was 3 to 8 months, this conviction was not a "felony" under

---

[8] There is an exception.  "[I]f the evidence is insufficient to support each of the means, a particularized expression of jury unanimity is required."  *State v. Sony*, 337 P.3d 397, 399 (Wash. Ct. App. 2014).  This rule ensures the jury's verdict is supported by legally sufficient evidence.  But if, as in most cases, sufficient proof exists to support both means—every defendant who unlawfully enters a building will necessarily be guilty of unlawfully remaining once inside—then juror unanimity between these two options is unnecessary.

ACCA.  CR(2255)_6 at 13-15 & Exh. 2.  Apart from being timebarred and procedurally defaulted, this claim is foreclosed by controlling precedent.  The Ninth Circuit has held the phrase "crime punishable by imprisonment for a term exceeding one year" refers to "the statutory maximum sentence for the offense, not the maximum sentence available in the particular case under the [Washington] sentencing guidelines." *United States v. Morillo,* 422 F.3d 1152, 1154 (9th Cir. 2005).  The statutory maximum term for Murray's second-degree burglary conviction was 10 years.  Wash. Rev. Code §§9A.20.021(1)(b), 9A.52.030(2).

Murray recognizes *Morillo*, but argues it is "no longer good law" following the Supreme Court's decisions in *Carachuri-Rosendo* and *Moncrieffe*.  CR(2255)_6 at 13-15.  The Ninth Circuit has recently rejected this argument in an unpublished decision, *United States v. Fletes-Ramos*, 612 F. App'x 484, 485 (9th Cir. 2015), *petition for cert. filed*, and although not binding this decision is correct and should be followed.  *Carachuri-Rosendo* and *Moncrieffe* do not address the question whether a presumptive sentencing guidelines range defines the maximum term of imprisonment for an ACCA predicate.  Rather, each involved the question whether a conviction for possessing a small amount of marijuana constituted an "aggravated felony" under the Immigration and Nationality Act ("INA").  And the Supreme Court's analysis does nothing to undermine the continuing validity of cases like *Murillo*.

In *Carachuri-Rosendo*, the Supreme Court held that for a state conviction to qualify as an INA predicate, the state crime must have been punishable as a felony under federal law, and not merely that the defendant's prior conduct and facts outside the record of conviction might have authorized a felony conviction under federal law.  560 U.S. at 582.  *Moncrieffe* similarly held that to qualify as an INA predicate, a state statute must require proof of all the elements necessary to allow the defendant's offense to be charged as a felony under federal law, including any sentencing-focused elements that elevate the federal offense from misdemeanor to felony.  133 S. Ct. at 1686-87.  In these decisions

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  —  18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206)553-7970

the Supreme Court directed courts to avoid any "post hoc investigation into the facts of predicate offenses," *id.* at 1690, because a categorical analysis does not permit resort to "facts outside of the record of conviction." *Carachuri-Rosendo*, 560 U.S. at 582. But that is precisely what Murray asks this Court to do. His approach would have the Court look not at the Washington statute of conviction and the maximum statutory penalty but to the sentencing guidelines that would apply based on the particular facts of his case, including his relevant criminal history. *See* CR(2255)_6 Exh. 2. Neither *Moncrieffe* nor *Carachuri-Rosendo* permit this and thus they are of no aid to Murray.

The more applicable precedent is *United States v. Rodriguez*, 553 U.S. 377 (2008), which addressed whether a Washington drug conviction qualified as an ACCA predicate as "a serious drug offense." A state drug offense qualifies as a "serious drug offense" if "a maximum term of imprisonment of ten years or more is prescribed by law" for the "offense." 18 U.S.C. §924(e)(2)(A)(ii). *Rodriguez* held the term "maximum term of imprisonment" refers to "the maximum term prescribed by the relevant criminal statute, not the top of a sentencing guidelines range." *Rodriquez*, 553 U.S. at 391. The Supreme Court explained the "top sentence in a guidelines range is generally not really the 'maximum term . . . prescribed by law' for the 'offense' because guidelines systems typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range under appropriate circumstances," and noted Washington is such a jurisdiction. *Id.* at 390-91. While Murray correctly points out that *Rodriguez* construed language applicable to a different type of ACCA predicate (CR(2255)_6 at 14), there is no reason to think the reasoning underlying *Rodriguez*—that the statute of conviction is the touchstone for determining the crime's permissible punishment—does not apply to other ACCA predicates. And since Washington's second-degree burglary statute does not depend on a recidivist finding to authorize a sentence of over one year, whether or not "'a recidivist finding could set the 'maximum term of imprisonment'" is not implicated in this case. CR(2255)_6 at 14 (quoting *Carachuri-Rosendo*, 560 U.S. at 577 n.12).

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB — 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Murray also relies on cases from three other circuits to support his claim—*United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014); *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc); *United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011) (CR(2255)_6 at 14)—but that reliance is misplaced. Each of these cases addresses the unique statutory schemes in North Carolina and Kansas under which a sentencing judge has absolutely no discretion to impose a sentence above the applicable guidelines range. *See Brooks*, 751 F.3d at 1205-06; *Simmons*, 649 F.3d at 244; *Haltiwanger*, 637 F.3d at 884. Washington, by contrast, gave sentencing courts the authority to impose a sentence above (or below) the guidelines range when Franklin was sentence in 1996, *see* Former Wash. Rev. Code §9.94A.120(2) (1996), and continues to do so today. *See* Wash. Rev. Code §9.94.535  Murray makes no effort to demonstrate why legal conclusions based on an analysis of the legal systems of North Carolina and Kansas should apply to the sentencing scheme of a state, like Washington, where the guidelines do not set a cap on the "crime's *potential* punishment," which is what determines whether a crime is a felony for ACCA purposes. *Murillo*, 422 F.3d at 1155.

Finally, relying on a confession of error by an Assistant United States Attorney in Texas, Murray insists "the Government has recognized the relevance of *Carachuri-Rosendo* to a sentencing scheme essentially identical to Washington's" in agreeing to a summary remand for resentencing. CR(2255)_6 at 15 & Exhs. 3-4. The short answer to this is that the Western District of Washington is not bound by the incorrect legal position taken by Southern District of Texas. Nor does that office's litigating position bind this Court in any way, *see United States v. Ogle*s, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc), or confer any rights upon Murray. *Cf. United States v. Apel*, 134 S. Ct. 1144, 1151 (2014) ("we have never held that the Government's reading of a criminal statute is entitled to any deference").

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**E.      A Certificate Of Appealability Should Not Issue.**

A defendant may not appeal a decision denying a motion under 28 U.S.C. §2255 without obtaining a certificate of appealability. 28 U.S.C. §2253(c)(1)(B). The decision whether to grant a certificate of appealability must be made by this Court in the first instance. *See* Ninth Circuit Rule 22-1(a); *see also* Fed. R. App. P. 22(b)(1). To obtain a certificate of appealability, the defendant must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And if any of the defendant's claims are found procedurally defective, he must also show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons discussed, Murray has not advanced a colorable substantive claim for relief, nor any claim that is not procedurally defective. He is therefore not entitled to a certificate of appealability. *See*, *e.g. Allen v. Ornoski*, 435 F.3d 946, 951-54 (9th Cir. 2006).

## IV.      CONCLUSION

For the forgoing reasons, Murray's motion for relief under 28 U.S.C. §2255 should be denied, and a certificate of appealability should not issue.

Dated this 10th day of November, 2015.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Michael S. Morgan*
MICHAEL S. MORGAN
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:    (206) 553-2612
Fax:              (206) 553-0755
Email: michael.morgan4@usdoj.gov

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  — 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

<u>CERTIFICATE OF SERVICE</u>

3

        I hereby certify that on November 10, 2015, I electronically filed the foregoing with the

4

Clerk of Court using the CM/ECF system which will send notification of such filing to the

5

attorney of record for the defendant.

6

        DATED this 10th day of November, 2015.

7

8

9

                                         *s/Michael S. Morgan*
                                         MICHAEL S. MORGAN

10

                                         Assistant United States Attorney
                                         United States Attorney's Office

11

                                         700 Stewart Street, Suite 5220

12

                                         Seattle, Washington 98101-1271
                                         Phone:  206-553-7970

13

                                         Fax:      206-553-0755
                                         Email:  michael.morgan4@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer Opposing Section 2255 Motion
*Charles Lynn Murray Jr. v. United States*, No. C15-5720RJB  —  22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970